THE PEOPLE OF THE STATE OF NEW YORK, APPEL-LANT, *v.* THOMAS FITZPATRICK, RESPONDENT.

*Grand jurors — objections to the constitutionality of the law under which they were drawn — when such objections cannot be raised by a person held to await the action of such grand jury — quashing of the indictment — challenge to the panel or array — discharge of the panel by the justice — Code of Criminal Procedure, sec. 238.*

The defendant had been held to await the action of the grand jury to be convened at the May term of the Albany Oyer and Terminer. Before the grand jurors were sworn the defendant appeared by counsel and filed a paper objecting to the grand jurors, upon the grounds that they had been selected under an unconstitutional law and had not been drawn from the grand jury box of the county, but from the petit jury box, and prayed the court to discharge them. By consent the motion stood over without prejudice to the defendant's rights, or to the right and duty of the court, the objection to any indictment which might be found to be considered and determined with the same force and effect as if decided prior to the organization of the grand jury. An indictment was found against the defendant. Some three months thereafter an order was made in the said Oyer and Terminer directing that as to this defendant the body impanneled as a grand jury be set aside and discharged as of the date of the first presentation of the objections; that the said indictment against him be not received and stand as quashed; that such order take effect as of May seventh; that nothing therein was to affect the action of the said grand jurors as to persons not having made such objections.

*Held,* that the order was obviously inconsistent, as a grand jury could not be discharged as to some of the persons indicted and remain as to the others, nor could a grand jury be discharged retroactively as was attempted to be done by this order.

That, even assuming the order to have been made on the seventh day of May, there was the further difficulty that it quashed or set aside an indictment which had not then been found.

The objections raised in this case were precisely the same as those raised in the Petrea case, in which the Court of Appeals held that where an indictment had

been found, by a grand jury drawn under the same law and in the same manner as the one whose action was now questioned, it should not be quashed upon defendant's motion.

*Held,* that the fact that in this case the objections were raised and the motion to quash was made before the indictment was found did not furnish a reason for sustaining the order; that an indictment cannot be quashed before it is found·

That the paper filed was in effect a challenge to the panel or array, and was forbidden by section 238 of the Code of Criminal Procedure.

That the discharge of the panel could not be sustained under the provisions contained in the said section, which authorizes the court "in its discretion" to discharge the panel for the reason, among others, that the required number of ballots was not drawn from the grand jury box of the county, because;

1st. If it was a wise exercise of his discretion to discharge the panel as to the defendant, the same discretion would have required him to discharge it as to all the persons indicted by it.

2d. That as the Court of Appeals had decided in the Petrea case that indictments found by such a grand jury were valid, it was an improper exercise of the discretion vested in the judge to set aside a panel.

The subject of the appealability of the order was not considered.

APPEAL from an order of the Court of Oyer and Terminer of Albany county, setting aside and discharging a grand jury and quashing an indictment.

At the May term, 1883, of the Albany Oyer and Terminer, the defendant, who had theretofore been held to await the action of the grand jury, appeared by counsel and filed objections to the persons about to be sworn in as grand jurors, alleging that they had been selected under an unconstitutional law (chap. 532 of 1881), and had not been drawn from the grand jury box of the county, but from the petit jury box, and asked that they be not sworn in but discharged.

The People, by their district attorney, objected to the entertaining of such motion, and replied that they had been drawn by the proper officer from the only box in existence from which to draw grand jurors; that they had been duly summoned as grand jurors, and that they were good and lawful men drawn from the body of the county. By consent the argument stood over until the coming in of the grand jury.

The grand jury was sworn in and thereafter made their presentments, one being against the defendant, and thereupon the defendant moved to have said indictment set aside upon the same grounds upon which he had objected to the organization of the grand jury. There-

after the court decided that as to the defendant the grand jury should be discharged and the indictment set aside; making also the same order as to several other cases, where similar objections had been made at the May Oyer and Terminer, in 1882. From that order the People appealed.

*D. Cady Herrick,* district attorney, for the appellant.

*Reilly & Hamilton,* for the respondent.

BOARDMAN, J.:

The defendant had been held to await the action of the grand jury to convene at May Term, 1883, of the Albany Oyer and Terminer. Before the grand jurors were sworn in, the defendant by counsel appeared and filed a paper containing certain objections to the grand jury and prayed the court to discharge them. The district attorney opposed this application. It was thereupon consented by both parties that the motion should stand over without prejudice to defendant's rights or to the right and duty of the court; that if an indictment should be found, the objections should be considered and determined with the same force and effect as if decided prior to the organization of the grand jury.

The grand jury, then organized, found an indictment against the defendant. About three months thereafter an order was made in said Oyer and Terminer that, as to said defendant, the body impanneled as a grand jury be set aside and discharged as of the date of the first presentation of the objections; that the said indictment against the defendant be not received and stand as quashed; that such order was to take effect as of May seventh; that nothing therein was to affect the action of said grand jurors as to persons not having made such objections.

From this order the people appeal and counsel on each side desire that the case may be considered and disposed of on the main question, rather than upon any technical ground which does not dispose of the merits.

In the first place there is an obvious inconsistency in the order. A grand jury cannot be discharged as to some of the persons indicted and remain as to the others. If discharged as to some, it it must be discharged as to all. Otherwise there would or might

be two grand juries at the same time, because the section which pro vides for discharging a grand jury requires the summoning of another. (Code of Criminal Pro., § 238.)

Again, it is obvious that when a body of men have been sworn and impanneled as a grand jury and as such have found indictments, they may be discharged as having finished their labors. But they cannot be discharged retroactively, as is attempted in this order; so that the order shall take effect as of a date prior to their action as a grand jury. Undoubtedly the indictments found by them may for good cause be quashed. But that is a very different matter. No order of the court, taken subsequent to the finding of the indictment, can alter the fact that a body of men, summoned as a grand jury, were not discharged but acted as such and found the indictment.

But counsel on both sides express the wish that this appeal should be considered as if the order had, in fact, been made on the seventh of May. And, therefore, we pass over the inconsistencies above mentioned. Still they seem to have occurred to the learned justice, because the order not only discharges the grand jury *nunc pro tunc*, which could not have been done, but it also quashes or sets aside the indictment. And thus we have the further difficulty that an order which is to take effect May seventh quashes or sets aside an indictment which had not then been found. That is, it quashes it in advance. The learned justice well expresses in his opinion the doubt as to what the order should be.

Let us next inquire whether the order was proper so far as it quashed the indictment. The objections raised are precisely those urged in the Petrea case. (1 N. Y. Crim. R., 198, 233 ; 28 Hun, 440.) It was in that case held by the Court of Appeals, affirming the decision of this court and of the Court of Sessions, that where an indictment had been found by a grand jury, drawn under this very law and in the very manner now in question, it should not be quashed on the defendant's motion. It cannot be necessary or proper to argue that question again. Whatever else may have been said in the opinion of the Court of Appeals, that principle was absolutely decided and such decision should govern. The Oyer and Terminer then should not, in this case, have quashed the indictment We think the learned justice must have seen that his decision

in this respect was contrary to the law of the Petrea case, for a large part of his opinion is made up of citations of authorities principally from other States tending to show that the decision of the Court of Appeals is wrong, and that an indictment found by a grand jury selected under an unconstitutional law should be quashed on the defendant's motion.

It is suggested, however, that although an indictment after it is found ought not to be quashed upon the grounds urged in the Petrea case, yet if these grounds were presented to the court before the indictment was found, as a reason for quashing it after it should be found, then the decision in the Petrea case would not apply and the indictment should be quashed. But this cannot be. That decision held that no constitutional right of the defendant was invaded by holding him to answer under the indictment, although the same facts appear there as appear here. An indictment cannot be quashed before it is found. After it is found the facts now alleged present no reason for quashing it, as was decided in the Petrea case. Hence the same facts can never be a ground for quashing an indictment, because until an indictment shall be found a motion to quash cannot be made.

But again, this order discharges the grand jury, or the body so called, and by agreement of counsel we are to consider the order as if it had been made May seventh.

The first objection to this part of the order, which is obvious, is that just stated, viz., that on a motion by a person held to trial the court assumed to discharge the grand jury as to him and allow it to stand as to others. How could such an order be properly made at the opening of the court or at any other time? Would the court, on the seventh of May, have summoned another especially for this defendant? Would the court have charged the one grand jury to inquire as to all crimes, except those of Thomas Fitzpatrick, and the other to inquire as to his only? It is plain that, even when we treat this order as one made at the opening of the court, it is inconsistent with itself.

Again there are more serious objections. This paper filed by the defendant, call it by any name he may please, is really in effect a challenge to the array. This is a well known term which calls for

no definition. Similar objections were defined to be a challenge in the Petrea case. (28 Hun, 440 ; 1 N. Y. Cr. R., 198, 233 )

Now the Code of Criminal Procedure (§ 238) forbids any challenge to the panel or to the array of a grand jury. The counsel for the defendant urges that this section does not prevent objections made before the grand jury is impanneled. But a challenge is an objection made to the swearing in and impanneling of the grand jury, not an objection made after they are sworn in and impanneled. Such has been the ordinary meaning of the word, and in that sense the legislature must have used it when it forbade challenges to the pannel or array. It would be trifling to enact a section which meant that challenges to the panel or array could not be made after a grand jury was sworn in and impanneled, but might be made before.

The learned justice, however, takes another view and thinks that the challenges to the panel or array, which are forbidden by this section, are challenges to a legal panel or array of grand jurors and not challenges to an illegal panel. One would suppose there was not much necessity to prohibit challenges to the panel or array of a legal grand jury. The section means just what it says, that is, that challenges or objections to the panel or array of the grand jury can no longer be taken. It was evidently thought that, as the grand jury was only an accusing body, it was unnecessary to give an accused person the right to make objections to the details of its selection.

If the Code had not forbidden challenges of this kind, still, under the decision of the Petrea case, we do not see how this could be allowed. If the law in question were unconstitutional this could not be asserted by a party whose rights it did not affect. (Cooley Const. Lim., 163 ; *People* v. *B. F. and C. I. R. R. Co.*, per FINCH, MS.; *Town of Pierrepoint* v. *Loveless*, 72 N. Y., 211.) And the decision in the Petrea case was that the defendant's constitutional rights were not invaded by holding him to answer the indictment and, therefore, not invaded by the mode of selecting the grand jury. (*Friery* v. *The People*, 2 Keyes, 425.)

The learned judge, however, places this order on another ground. Section 238, above cited, after forbidding challenges, provides that the court may in its discretion, discharge the grand jury and order a new one to be summoned for any of several causes, among them,

" That the requisite number of ballots was not drawn from the grand jury box of the county." We can hardly understand how the order appealed from could have been made in the exercise of that discretion, because the learned justice says in his opinion that " whenever it plainly appears that every safeguard of law in the selection of grand jurors has been disregarded," etc. (that is, by the enactment of the very excellent chapter 532, Laws of 1881) then it was a wise exercise of discretion to set aside the supposed panel and to order a new panel to be summoned. Now if this were so, the same wise discretion would seem to require that other indicted persons should be protected as well as this defendant. And it would seem an unwise exercise of discretion to grant as a special favor to the defendant, the safeguard to which others were equally entitled. Yet the order, in the discretion of the court, withholds from those who have not made the objections, " the guaranties which the constitution gives to every citizen for his protection."

It may be remarked, in passing, that while in the opinion of the Court of Appeals in the Petrea case the act in question was spoken of as unconstitutional, yet it was distinctly held that the question of constitutionality could not be raised by the defendant in that case. As it could not be raised by him it could not in that case be decided by the court. As is said by Judge FINCH, in *People* v. *Brooklyn, Flushing and Coney Island Railroad* (MS. opinion), " it is our duty to decide a constitutional question only when it is directly and necessarily involved in the issue to be determined." Whatever was said as to the unconstitutionality of the law was *obiter*, that is, it was not involved in the decision and only served to encourage further efforts to thwart the criminal law.

Was then the discretion proper which was thus exercised by the Court of Oyer and Terminer in favor of Fitzpatrick, and refused as to other accused persons ? The Court of Appeals had held that such a grand jury was competent to find valid indictments. Why then should the Court of Oyer and Terminer set aside this competent jury ? The requisite number of ballots had been drawn. These ballots had been drawn from the only box and list of jurors made up in the county from which to draw grand jurors. This box and this list were, in fact, the grand jury box and list. It was plainly immaterial what the box was called. It held, in fact, the names

selected under color of law as 'grand jurors. And there was no other box or list from which grand jurors could be drawn. This box and this list were to such extent the box and list from which to draw grand jurors, and it had been held by the Court of Appeals that a grand jury drawn therefrom was a valid grand jury. For what possible reason or under what discretion then, should a grand jury so drawn be set aside? Not the least objection was made to the competency or qualifications of any or all of them. If the learned justice had refused to set the jury aside, the indictments found by them would have been valid and the administration of the criminal law would not have been obstructed by an objection without any real merit. We think it was not a wise exercise of discretion to set aside a body of unexceptionable men whose competency to find indictments had been established by the Court of Appeals.

It seems to us the error which underlies nearly all of the reasoning of the learned justice in his opinion is, that he assumes that any man may set up the unconstitutionalty of a law, although it does not affect his rights or subject him to any wrong. This is carried a step further in assuming that it is a wise discretion to set aside a body of competent officers against the mode of selection of whom, even if it be illegal, no one has the right to set up any objection.

No objection is made by the defendant to the right of the people to appeal from the order, and so that subject is not considered.

The order appealed from should be reversed.

LEARNED, P. J., and BOOKES, J., concurred.

Order reversed.